440 So.2d 1257 (1983)
Dan Edward ROUTLY, Appellant,
v.
STATE of Florida, Appellee.
No. 60066.
Supreme Court of Florida.
September 22, 1983.
Rehearing Denied December 12, 1983.
*1259 Raymond L. Goodman, Orlando, for appellant.
Jim Smith, Atty. Gen., and Richard W. Prospect, Asst. Atty. Gen., Daytona Beach, for appellee.
ADKINS, Justice.
This is an appeal by Dan Edward Routly from his conviction of first-degree murder and from the trial judge's imposition of the death sentence after the jury had recommended life imprisonment. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction and the sentence.
In mid-1979 defendant and his girlfriend, Colleen O'Brien, were travelling throughout Florida looking for work. They settled temporarily in the Ocala area when defendant was offered employment. Defendant and O'Brien stayed at several locations during their term of residence in the area. *1260 First, they resided in a trailer which belonged to defendant's employer. After defendant's employment was terminated, they lived in a friend's garage apartment for a short term. Thereafter, they resided briefly at a campground.
During this period of time, defendant and Ms. O'Brien were apparently having domestic difficulties which resulted, at one point, in O'Brien leaving defendant. For some reason O'Brien accepted a ride from the victim, Anthony Bockini, a retired resident of the community. Bockini dropped O'Brien off at the campground and gave her his name, address, and phone number with instructions for her to call if she needed help.
Apparently unable to resolve the dispute with defendant, O'Brien called Bockini the next day and requested that he come and pick her up. Bockini complied and O'Brien stayed overnight, during which time she began making preparations to take a bus back to Michigan.
The following evening the defendant went to Bockini's house in an attempt to reconcile with O'Brien. Bockini was not at home at the time, and O'Brien let the defendant into the house. When Bockini later returned, defendant feigned a departure out the back door, but subsequently converged on the victim wielding a gun and demanded him to lie on the bed. Defendant then bound (hands and feet) and gagged the victim and ransacked his home looking for money and valuables. Defendant broke ceramic banks on the floor pilfering the contents, and took the money from the victim's wallet.
Next, the defendant loaded the victim into the trunk of his (victim's) car, told O'Brien to pack her belongings and they set out on a journey purportedly looking for a "field to let him out in." While defendant was looking for an appropriate place to discharge the victim, the tail lights on the vehicle began to malfunction. Defendant drove a short distance further until he found an appropriate place to stop. He pulled off the road, took the victim out of the trunk, shot the victim three times and dragged him up under some bushes.
The partially decomposed body of the victim was discovered sometime later by a person plowing the field. Defendant and O'Brien drove to Louisiana where he washed the car and abandoned it, keys in the ignition (hoping someone would steal it).
Later that year, O'Brien was arrested by authorities in Flint, Michigan. While in custody, she informed the Flint authorities of the murder and implicated defendant. Officers from Marion County, Florida, were notified and traveled to Michigan where they interviewed O'Brien, and, with the assistance of Flint authorities, arrested defendant.
Defendant waived extradition; he was indicted by a Marion County Grand Jury, tried and convicted of first-degree murder.
As his first point on appeal, defendant argues that the trial court erred in failing to suppress his tape-recorded confession which he gave to the Florida officers shortly after his arrest in Michigan. Defendant's first contention on this issue is that his confession was the fruit of an unlawful arrest. To support this contention defendant quotes the testimony of Officer Black, a uniformed police officer from Flint, who was directed by superiors to stop and arrest the defendant. Black testified that he arrested the defendant because "he was wanted for questioning in regards to a murder from Florida." Although the defendant cites no authority for his position, he seems to assert that the state is bound by the legal conclusion as articulated by the Michigan officer on cross-examination, and that we should infer from this testimony that the defendant was arrested on information that fell below the standard of probable cause.
At the outset and dispositive on this issue is the fact that the defendant failed to make a contemporaneous specific objection at trial. Not having done so, he cannot now raise this issue on appeal. Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982); Jones v. State, 360 So.2d 1293, 1296 *1261 (Fla. 3d DCA 1978). Further, even had the argument been properly preserved, the record indicates that the officers did in fact have probable cause to arrest the defendant for murder. The officers had previously taken a statement from defendant's girlfriend, an eyewitness to the murder, who implicated the defendant as the perpetrator. The mere fact that Officer Black was not privy to this statement would not render the arrest unlawful. Nor would the legal conclusion of the officer prevent the state from arguing and presenting evidence that probable cause did in fact exist.
We note further that there is also evidence in the record that the Michigan authorities had outstanding warrants for the defendant on unrelated charges. Therefore, even had he preserved this argument, we would hold it to be without merit.
The defendant next asserts that the confession was not voluntarily given, having been induced by various promises made by the officers. Defendant relies on a factual dispute between the testimony of the officers and himself. These issues have been resolved by the fact-finder in favor of the state, and we find nothing in the record that supports a reversal on this issue.
As his second point of error, defendant alleges that the trial court erred in failing to grant the defendant's motion for discharge based on a violation of Fla.R.Crim.P. 3.191 (speedy trial). The defendant was arrested on December 5, 1979. On May 20, 1980, the trial court issued a written order granting an extension of time under the speedy trial rule. In his order, the court stated that Colleen O'Brien, a resident of Michigan, and the only eyewitness to the murder, was incapacitated as a result of her "unexpected medical condition and the late stage of her pregnancy," and that her "presence or testimony is uniquely necessary for a full and adequate trial." (Emphasis supplied). The trial commenced on July 14, 1980, seven months after the defendant was arrested and within the period of the extension.
Defendant argues that the witness' condition was not unexpected because the state was aware of her pregnancy from the outset, and the opportunity to go to trial on an earlier date was within the state's discretion. The defendant asserts that he was at all times prepared for trial, although he did not file a formal demand, and that the state should have foreseen the delivery as the natural consequence of pregnancy and provided for an earlier trial.
The hearing for the motion took place on April 15, 1980, at which time the assistant state attorney presented the factual basis for exceptional circumstances to the court below. These facts, as set forth in the record, indicate that the witness' estimated delivery date was one and one/half months away, but that she was experiencing cramps and had been advised by her doctor that travelling could be hazardous. Based on this evidence, the trial court found that Fla.R.Crim.P. 3.191(f)(1) (unforeseeable absence of person who is uniquely necessary), was applicable.
That the unforeseeable unavailability of a witness is grounds for an extension of the speedy trial rule is clear. Fla.R. Crim.P. 3.191(f); Dedmon v. State, 400 So.2d 1042, 1045 (Fla. 1st DCA 1981); Foster v. State, 380 So.2d 1081, 1082-83 (Fla. 3d DCA), review denied, 388 So.2d 1113 (Fla. 1980); State v. Rheinsmith, 362 So.2d 698, 699 (Fla. 2d DCA 1978); State v. Wolfe, 271 So.2d 203, 204 (Fla. 4th DCA 1972). Further, the trial court's determination of exceptional circumstances is a matter of discretion based on the facts presented below. Talton v. State, 362 So.2d 686, 687 (Fla. 4th DCA 1978), cert. denied, 370 So.2d 462 (Fla. 1979).
The only question in dispute was the foreseeability of the witness' unavailability for trial. The trial court found that the unavailability was unforeseeable; we believe that the record supports this finding. The witness was in her penultimate month of pregnancy and evidently experiencing unusual cramps which cautioned against her travel. We find no abuse of discretion.
*1262 We have considered other purported procedural errors asserted by the defendant and find them to be without merit. We have also reviewed the evidence pursuant to Florida Rule of Appellate Procedure 9.140(f), and we conclude that no new trial is required.
Defendant's next arguments concern the imposition of death by the trial court, despite the jury recommendation of life. The trial court in his written findings of fact pursuant to section 921.141(3), Florida Statutes (1981), found five aggravating circumstances applicable.
The first aggravating circumstance found applicable was section 921.141(5)(d) (the capital felony was committed while the defendant was engaged in the commission of a robbery, rape, arson, burglary, kidnapping, etc.). In support of his conclusion, the court made the following factual findings:
The Defendant entered the home of Anthony Francesco Bockini after dark, Sunday evening, June 17, 1979, when the victim was not at home. The entering was without any legal right or authority and was with the intent to commit theft and therefore amounted to burglary. Anthony Francesco Bockini was retired, a widower who lived at home alone and devoted his retirement years to volunteer community service. On June 17, 1979, after working as a volunteer in a community hospital, he had dinner with friends, a retired attorney and his wife. He left their house and went home, still wearing a volunteer hospital uniform. When he went into the bedroom to change, the Defendant came in from the back room, pulled a gun on him, told him to lay down on the bed, tied him up, and went through his house looking for some money. He found ceramic banks in a drawer, broke them on the floor, and took the change. He took a couple of dollars from the victim's wallet. He went through the house and picked up some radios and things that he could get rid of for gas. He tied the victim's hands and feet, gagged him with a bandana and carried him outside and put him in the trunk of his own car. He drove north of Ocala down back roads and took the old two lane road to Reddick.
The court concluded from these facts that the defendant committed the homicide while engaged in a kidnapping and while fleeing from the previously committed burglary.
The defendant argues that the findings of fact do not support the conclusion that he committed a burglary, since the record indicates that defendant legally entered the home from the outset. This argument is without merit. The burglary statute is satisfied when the defendant "remains in" a structure with the intent to commit an offense therein. Hence, the unlawful entry is not a requisite element. § 810.02(1), Fla. Stat. (1981). Further, the record would support a finding that the defendant also committed a robbery. § 812.13(1), Fla. Stat. (1981). And, even had the requisite elements for robbery and burglary not been present, the defendant concedes his commission of a kidnapping; therefore, the other offenses are mere surplusage.
The court below also found as applicable section 921.141(5)(e) (the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody). The trial court bases this conclusion on the following facts:
In driving out of Ocala on back roads towards Reddick the Defendant looked for a side street where there weren't many cars and looked for a field away from houses where he could put the victim out. He took the victim out of the trunk, shot him three (3) times and dragged him back under some bushes. The Defendant's girlfriend, Colleen O'Brien, was with him continuously from inside the victim's house up to the murder. After the murder, the Defendant took Colleen back to their residence in Ocala and picked up the Defendant's other girlfriend, Mary Avery, and her daughter, by the Defendant, and drove to Tallahassee where he put Mary on a bus back to Miami. He told Mary he shot somebody *1263 and she was scared. He and Colleen drove on to some city in Louisiana. There, he took the car to a car wash, washed it all down in the trunk and cleaned the inside out to get the fingerprints out. He parked the car at a bar and left the keys in it, hoping somebody would take it. Later he told his brother he shot somebody. Except for his brother, Colleen and Mary, no one learned of the murder through the Defendant.
Colleen O'Brien testified at trial. It is impossible to communicate verbally through the cold record the non-verbal testimony through her demeanor on the witness stand. Her demeanor portrayed total domination by the Defendant.
By killing the victim, the Defendant eliminated the only witness who would apparently testify against him as to the burglary and theft of the victim's property, cash and automobile.
The defendant argues that the evidence is insufficient to find this aggravating fact is applicable beyond a reasonable doubt. In support of this argument, defendant cites Riley v. State, 366 So.2d 19 (Fla. 1978), cert. denied, ___ U.S. ___, 103 S.Ct. 317, 74 L.Ed.2d 294 (1982). This case, however, does not support the defendant's position. In Riley, the defendant shot and killed the victim during a robbery. The victim, who knew the defendant, was bound and gagged after one of the perpetrators expressed a concern over possible subsequent identification. We held that the trial court properly applied this aggravating factor. We said that this aggravating factor is broad enough to encompass the situations where a defendant murders the witness to a crime. We issued a caveat, however, against the mechanical application of this factor whenever a death occurs: "Proof of the requisite intent to avoid arrest and detection must be very strong in these cases." Id. at 22.
We believe that the evidence in the instant case as interpreted by the fact-finder is strong enough to comply with the Riley caveat. We have upheld this finding in numerous cases under facts not unlike the case sub judice. See e.g., Bolender v. State, 422 So.2d 833 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 2111, 77 L.Ed.2d 315 (1983) (defendants robbed victims of drugs, held them for hours and tortured them to death and near death, then disposed the bodies by setting on fire the vehicle containing their bodies. Defendant's intent in killing the victims was partially to prevent victims from identifying defendants); Martin v. State, 420 So.2d 583 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983) (defendants robbed the victim, a convenience store clerk, kidnapped her, raped her and drove her to a dump where she was stabbed to death and discarded); Griffin v. State, 414 So.2d 1025 (Fla. 1982) (defendants abducted bystander to convenience store robbery and homicide, dragged him off into a wooded area, shot and killed him); Adams v. State, 412 So.2d 850 (Fla.), cert. denied, ___ U.S. ___, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982) (defendant abducted an 8-year-old girl, sexually assaulted her, strangled her to death, encased the body in plastic and disposed of it in a desolate area); Washington v. State, 362 So.2d 658 (Fla. 1978), cert. denied, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979) (robbery victims murdered). The facts in all of these cases were devoid of any evidence of an express statement by the defendant indicating their motives to kill the victims for the purpose of avoiding arrest. Therefore Riley cannot be distinguished on this basis and the decision supports the applicability of this factor in the instant case.
The defendant also asserts that our decision in Menendez v. State, 368 So.2d 1278 (Fla. 1979), supports his position. In Menendez the defendant robbed a jewelry store and shot the proprietor using a silencer-equipped firearm. A customer happened onto the scene in time to see the defendant emptying the store safe. The customer provided a description to police which enabled them to effect an expeditious arrest. We held that the trial court there improperly applied this aggravating factor. We distinguished Riley as follows: "Here, unlike Riley, we do not know what events preceded *1264 the actual killing; we only know that a weapon was brought to the scene which, if used, would minimize detection. We cannot assume Menendez's motive; the burden was on the state to prove it." Id. at 1282 (emphasis supplied).
The motive for the murder in Menendez could have been based on any number of reasons. For example, the victim may have resisted the robbery either physically or by attempting to attract attention. In the case sub judice, however, we know what transpired immediately prior to the murder. Therefore, the case at bar is like Riley and unlike Menendez in this respect. Although there is no express statement by the defendant that indicates the elimination of the eyewitness as his motive, the facts as found by the trial court support this finding. First, the defendant knew that the victim knew him and could later provide the police with his identity. Further, the defendant had no logical reason for binding the victim, kidnapping him and driving him to a secluded area except for the purpose of murdering him to prevent detection. In fact, defendant has not been able to assert any other explanation for this behavior in this appeal.
The trial court considered the fact that the defendant did not kill Ms. O'Brien, an eyewitness to the robbery kidnapping, in determining whether his motive was the elimination of witnesses. The court made the specific finding that O'Brien was so heavily under the influence of the defendant that he had no reason to fear that she would later report him. Therefore, this added fact does not weaken the finding that the defendant killed the victim to eliminate the witness to the robbery/kidnapping, and has no significance in the instant case. See also Welty v. State, 402 So.2d 1159 (Fla. 1981).
The defendant's next contention, that the application of section 921.141(5)(f) (capital felony was committed for pecuniary gain) was improper due to doubling of the aggravating factors of robbery and pecuniary gain under Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977), is without merit. Here the defendant also committed a kidnapping and an improper doubling has not occurred. Bolender v. State, 422 So.2d 833 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 2111, 77 L.Ed.2d 315 (1983); Stevens v. State, 419 So.2d 1058 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983).
As his next point of error defendant asserts that the trial court improperly found as applicable section 921.141(5)(h) (that the capital felony was especially heinous, atrocious, or cruel). The trial court's findings of fact on this element are as follows:
The victim was retired, a widower, who devoted his retirement years to community service. He lived at home alone. Upon returning home one Sunday evening, after working at the hospital followed by dinner with friends he was assaulted with a firearm in the sanctity of his home in his own bedroom, bound hand and foot, and gagged. Money was taken from his wallet from his person and ceramic banks were broken on the floor. He was physically carried out of his own house, thrown into the trunk of his own car, and driven out of town down back roads in the middle of the night. He most surely knew that he was going to die. He tried to escape by disconnecting the back lights to the car. He was taken to an isolated area, removed from the trunk and shot three times.
Citing Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977), the defendant argues that the victim was killed in an instantaneous manner by gunshot which, he asserts, is not heinous, atrocious or cruel. Cooper is, however, inapposite. In that case, the defendant walked up to the victim, a deputy sheriff, and shot him twice in the head killing him instantly. Id. at 1136. We emphasized that the victim was killed "instantaneously and painlessly" in holding that the circumstances in that case did not constitute a killing which could be labelled heinous, atrocious or cruel. Id. at 1141.
*1265 Whether or not the victim in the instant case died instantaneously is unclear from the record. The medical examiner testified that, if her conclusions concerning the number of bullets and angle of the wound were correct, that "death would have been within a matter of a few minutes."
However, we do not rely on this evidence to distinguish the instant case from Cooper. We have upheld the application of this factor where victims have been murdered by gunshot and have died instantaneously on several occasions in factual scenarios not unlike the case at bar. See e.g. Smith v. State, 424 So.2d 726 (Fla. 1982); Griffin v. State, 414 So.2d 1025 (Fla. 1982); Steinhorst v. State, 412 So.2d 332 (Fla. 1982); Adams v. State, 412 So.2d 850 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982); White v. State, 403 So.2d 331 (Fla. 1981); Knight v. State, 338 So.2d 201 (Fla. 1976). The common element in these cases is that, before the instantaneous death occurred, the victims were subjected to agony over the prospect that death was soon to occur. The trial court in his findings of fact concluded that the victim knew he was going to die; the evidence supports this conclusion. Mr. Bockini must have known that the defendant had only one reason for binding, gagging and kidnapping him. In a desperate effort to gain freedom, the victim apparently disconnected the vehicle tail lights. Having arrived in an isolated area, the victim was forcibly removed from the trunk and shot to death without the slightest mercy. The terror that was felt by the victim during this ride, and immediately precedent to his death is beyond description by the written word and is indistinguishable from the terror and fear felt by the victims in Knight, Adams, Steinhorst, White, and Smith. We therefore hold that the heinous, atrocious or cruel factor was properly applied by the court below.
The trial court also found section 921.141(5)(i), Florida Statutes (1981) (cold, calculated and premeditated manner), to be applicable in this case. In support of this finding, the court stated the facts as follows:
This crime was a homicide committed with a firearm which the Defendant purchased under false pretenses, using the name Keith Rosencrantz... . This fact, together with the other circumstances of this case, indicate that this capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification... .
The defendant argues that there is insufficient evidence in the record to support this finding by the trial court; we disagree. Although we fail to see the relevance in the finding that the defendant purchased the weapon under "false pretenses", since the defendant did not even know the victim when the firearm was purchased. Nevertheless, the other circumstances of this case, considered by the trial court, are sufficient standing alone to support a finding of applicability of this factor. As we have previously stated, this factor applies in murders "which are characterized as executions or contract murders, although that description is not intended to be all-inclusive." McCray v. State, 416 So.2d 804, 807 (Fla. 1982) (citing Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982)). We find the execution style killing in the case sub judice to be without relevant distinctions from similar cases where we have affirmed the application of this factor. See e.g. Smith v. State, 424 So.2d 726 (Fla. 1982) (convenience store clerk robbed, sexually battered and taken to a wooded area where she was shot three times in the head); Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982) (to facilitate a robbery, defendant lured the victim to a wooded area, under the pretext of it being a shortcut to a party, and thereafter shot her in the head several times).
Therefore, we hold that the trial court properly found five aggravating circumstances to be applicable, and turn to the *1266 issue of mitigating circumstances of which the trial court found none to be applicable.
The defendant argues that the trial court should have found three mitigating factors applicable, the defendant's age, the defendant's lack of significant criminal history and that defendant was under the influence of extreme mental or emotional disturbance.
With regard to the defendant's age as a mitigating factor, the court held, based on observations of the defendant at trial, the presentence investigation, the psychiatric evaluation and the facts in this crime, that the defendant's age of 25 at the time of the crime was not a mitigating factor in the instant case. We hold that the court was not required to find appellant's age to be a mitigating factor, and find no basis for reversal on this issue. Simmons v. State, 419 So.2d 316 (Fla. 1982).
Defendant further asserts that the court improperly found as inapplicable section 921.141(5)(a) (lack of significant criminal history); we find no merit to this contention. Booker v. State, 397 So.2d 910 (Fla. 1981), cert. denied, 454 U.S. 957, 102 S.Ct. 493, 70 L.Ed.2d 261 (1981). We also find no merit to defendant's contention that section 921.141(5)(b) (defendant was under influence of extreme mental disturbance), was improperly not applied by the court below.
The trial court considered the disparate treatment of Colleen O'Brien, who received immunity, as a possible non-statutory mitigating circumstance. It held, however, that O'Brien was not an accomplice and that mitigation based on this factor was not warranted in this case; we agree. The case at bar is distinguishable on this issue from cases such as Slater v. State, 316 So.2d 539 (Fla. 1975), where a more culpable co-defendant received a less severe sentence than the appellant, and there was no error in treating the defendant differently than O'Brien. See Downs v. State, 386 So.2d 788 (Fla.), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 238 (1980).
We have compared, as did the trial court, the facts in the case sub judice with cases where we have upheld the imposition of the death penalty on similar facts and find the sentence imposed to be consistent with those cases. See e.g., Martin v. State; Griffin v. State, 414 So.2d 1025 (Fla. 1982); Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982). The lower court properly found the existence of five aggravating factors and no mitigating factors. Even though a jury recommendation is to be accorded great weight by the sentencing judge, death is the appropriate penalty in this situation and the judge was proper in overriding the jury in this case. Stevens v. State, 419 So.2d 1058, 1065 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983).
Defendant's last contention concerns the constitutionality of Florida's death penalty statute both on its face and as applied to the case sub judice. Defendant concedes that the issue raised in his brief has been addressed and rejected by this court on previous occasions but invites us to reconsider our position on these issues. We find these contentions to be without merit and decline the defendant's invitation. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).
Accordingly, we affirm the judgment of conviction and the sentence of death.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON and EHRLICH, JJ., concur.
McDONALD, J., concurs in result only on sentence with an opinion.
McDONALD, Justice, concurring in result only on sentence.
I disagree that the aggravating factor of "the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody" was properly found in this case. This finding is based on circumstantial evidence. *1267 Those circumstances are subject to many hypotheses on why this homicide was perpetrated. This defendant apparently had a terrible temper and had become estranged with his girlfriend. The victim had provided aid and comfort to the girlfriend and had provided a safe harbor for her. It is as likely, and I would say more, that the killing flowed from rage rather than any desire to eliminate the witness to the crime of robbery and thus avoid prosecution for the crime of robbery. Every aggravating factor must be proved beyond a reasonable doubt. This one was not.
This conclusion does not, however, cause me to disagree with the imposition of the death penalty, even in the face of a jury recommendation of life imprisonment. A jury, and the trial judge, has the responsibility of weighing the aggravating and mitigating circumstances. Valid aggravating factors remain in this case; no mitigating circumstances, statutory or nonstatutory, are discernible. There appears to be no rational basis, when viewed in this weighing process, for a jury to recommend life imprisonment. Here the trial judge properly rejected the jury's recommendation. Routly's sentence, even without the aggravating factor mentioned above, should stand.