590 So.2d 397 (1991)
Dan Edward ROUTLY, Appellant,
v.
STATE of Florida, Appellee.
No. 73963.
Supreme Court of Florida.
October 17, 1991.
Rehearing Denied January 2, 1992.
*398 Larry Helm Spalding, Capital Collateral Representative and Martin J. McClain, Chief Asst. CCR, Office of Capital Collateral Representative, Tallahassee, for appellant.
Dan Edward Routly, in pro. per.
Robert A. Butterworth, Atty. Gen. and Richard B. Martell, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Dan Edward Routly, a prisoner under sentence of death, sought postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. After an evidentiary hearing, the circuit court denied relief. Routly appeals. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
In 1979, Routly and Colleen O'Brien traveled from Michigan and settled in Ocala. Domestic difficulties arose, and O'Brien left Routly. She met Anthony Bockini, a retired resident of the community, who offered her assistance. O'Brien returned to Routly but the next day telephoned Bockini and asked him to come and pick her up. She stayed overnight at Bockini's house, but she returned to Routly the next day. O'Brien left Routly again several days later. She returned to Bockini's house and made plans to return to Michigan.
Routly went to Bockini's house in an attempt to reconcile with O'Brien. Bockini was away but returned while Routly was still there. Routly pulled a gun on him, bound his hands and feet, ransacked his house looking for money and valuables, and took money from his wallet. Routly loaded Bockini into the trunk of Bockini's car and he and O'Brien went out purportedly looking for a place to let Bockini out. The taillights on the car malfunctioned as a result of Bockini's efforts to escape. Routly stopped the car, shot Bockini three times, and dragged the body under some bushes.
O'Brien was arrested later that year in Michigan. She implicated Routly in the murder. Routly was taken into custody in Michigan. He confessed and waived extradition to Florida. He was convicted of first-degree murder. The trial court overrode the jury's recommendation of life imprisonment and imposed the death penalty, finding five aggravating and no mitigating circumstances.[1] This Court affirmed the *399 conviction and the death sentence on direct appeal, Routly v. State, 440 So.2d 1257 (Fla. 1983), cert. denied, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 888 (1984), and denied a subsequent petition for habeas relief. Routly v. Wainwright, 502 So.2d 901 (Fla. 1987).
In his first claim in this appeal,[2] Routly asserts that the State suppressed critical exculpatory and impeachment evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The evidence relates to Colleen O'Brien, who was the State's key witness. Routly claims that the State did not disclose the following items: O'Brien's written immunity contract; a letter from O'Brien stating that she refused to give any information that could relate to prosecution of her except under contract of immunity; and the affidavit of a Michigan police officer detailing his difficulty in locating O'Brien and indicating that O'Brien was afraid that she would be charged with the murder and that Routly would say that she committed the murder alone. Routly's trial counsel testified at the evidentiary hearing that he was not provided with or aware of these documents at the time of trial, and that the documents would have allowed him to cross-examine O'Brien more extensively and show her interest, bias, or prejudice.
The prosecution must disclose evidence favorable to the accused if the evidence is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194. In order to establish a Brady violation, one must prove: (1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant did not possess the evidence, nor could he obtain it with any reasonable diligence; (3) that the prosecution suppressed the evidence; and (4) that had the evidence been disclosed, a reasonable probability exists that the outcome of the proceedings would have been different. Hegwood v. State, 575 So.2d 170, 172 (Fla. 1991) (citing United States v. Meros, 866 F.2d 1304 (11th Cir.), cert. denied, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989)).
We do not find a Brady violation under the facts of this case. Defense counsel was aware prior to trial that O'Brien had received a written immunity agreement in exchange for her testimony. She told him so in her deposition approximately five days before trial. Defense counsel cross-examined O'Brien on the immunity agreement at trial. From that cross-examination the jury learned that O'Brien was given a written contract of immunity in exchange for her testimony; that by receiving immunity she would be able to have a life with her baby, which meant "everything" to her; that the State paid for her transportation to Florida to testify; that she was threatened with arrest if she did not testify; and that she presently was in the custody of law enforcement officers. Defense counsel told the jury during his opening statement that O'Brien had been charged with murder in this case and that she had been granted immunity. In closing argument, counsel reminded the jury of O'Brien's reluctance to testify; that she had been granted immunity; and that the immunity gave her a life with her baby, which meant more than anything in the world to her.
Upon our review of the record, we find no reasonable probability that had this evidence been disclosed, the outcome of the trial would have been different. At most, the documents at issue would have allowed for cumulative impeachment of O'Brien. They would not have revealed any material information to the jury that was not disclosed in cross-examination. See Aldridge v. State, 503 So.2d 1257 (Fla. 1987) (failure *400 to disclose memo did not violate Brady where memo would not have conveyed any information to the jury not already revealed by examination and cross-examination); Palmes v. Wainwright, 460 So.2d 362 (Fla. 1984) (failure to disclose that State granted witness immunity, promised her special assistance, and induced her testimony by threatening to deprive her of custody of her child not material where defense had full opportunity to impeach witness on immunity and information would have added only marginally to impeachment).
In his second claim, Routly asserts that the prosecutor knowingly allowed O'Brien to commit perjury at deposition and trial and failed to correct material false statements in violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Under those cases, the prosecutor has a duty to correct testimony he or she knows is false when a witness conceals bias against the defendant through that false testimony. United States v. Meros, 866 F.2d at 1309. If there is a reasonable probability that the false evidence may have affected the judgment of the jury, a new trial is required. Giglio, 405 U.S. at 154, 92 S.Ct. at 766 (quoting Napue v. Illinois, 360 U.S. 264, 271, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217 (1959)). "The thrust of Giglio and its progeny has been to ensure that the jury know the facts that might motivate a witness in giving testimony, and that the prosecutor not fraudulently conceal such facts from the jury." Smith v. Kemp, 715 F.2d 1459, 1467 (11th Cir.), cert. denied, 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699 (1983).
To establish a Giglio violation, Routly must show: (1) that the testimony was false; (2) that the prosecutor knew the testimony was false; and (3) that the statement was material. United States v. Lochmondy, 890 F.2d 817, 822 (6th Cir.1989).
Routly cites several instances in which O'Brien allegedly gave false testimony. O'Brien testified on cross-examination that she did not know whether she was free to go back to where she resided. Routly argues that, in fact, she was not free to leave until she finished her obligations under the immunity contract. Equivocal testimony such as this does not constitute false testimony for purposes of Giglio. See United States v. Petrillo, 821 F.2d 85, 89 (2d Cir.1987). When asked on cross-examination what she was granted in exchange for her testimony, O'Brien responded, "Immunity." Further, she testified that in exchange for her testimony, she would be able to have a life with her baby. Routly argues that these statements were false because the immunity agreement contained various other promises and provisions that O'Brien did not identify. O'Brien's failure to detail every provision of her immunity agreement in response to these questions does not constitute false testimony. Further, in view of the entirety of O'Brien's testimony, we find no reasonable probability that the failure to discuss other details of her immunity agreement affected the jury's judgment.
Routly also argues that the prosecutor should have corrected O'Brien when she denied in deposition and at trial that she had been charged with Bockini's murder. In fact, a warrant charging her with second-degree murder was issued shortly before trial.[3] We do not believe that this amounts to a Giglio violation. The prosecutor testified at the evidentiary hearing that although he had filed an information shortly before trial charging O'Brien with second-degree murder, she was not arrested on the warrant, and he believed that she did not know of its existence. O'Brien testified at the evidentiary hearing that she did not know that there was an arrest warrant out for her at the time. Further, our review of the record convinces us that the jury was not misled about O'Brien's *401 status. The jury was aware of O'Brien's situation and could test her credibility in light of her threatened position. See Smith v. Kemp, 715 F.2d at 1467. We find no reasonable probability that this testimony affected the judgment of the jury.
Next, Routly claims ineffective assistance of counsel in the guilt and penalty phases of his trial. To establish this claim Routly must demonstrate: (1) that counsel's performance was deficient; and (2) a reasonable probability that the result of the proceeding would have been different absent the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Eutzy v. State, 536 So.2d 1014, 1015 (Fla. 1988).
Routly claims that counsel was ineffective in the penalty phase for failing to investigate and present mitigating evidence regarding his difficult childhood. He argues that had such evidence been presented, there would have been a sufficient basis to support the jury's recommendation of life imprisonment. See Ferry v. State, 507 So.2d 1373, 1376 (Fla. 1987) (if there is a reasonable basis in the record to support the jury's recommendation, override is improper). At the evidentiary hearing below, Routly's trial counsel testified that he conducted little, if any, investigation for the penalty phase of trial and that he was ineffective for failing to do so.[4] He testified that he contacted Routly's mother, who was "disinterested" and said that she could not afford to come to the trial. He may have talked to one other family member. However, according to counsel, Routly discouraged him from contacting family members. Counsel also contacted one of Routly's schools and received correspondence indicating that Routly had a significant behavior problem in school.
In support of his 3.850 motion, Routly submitted affidavits from several family members and one of his former teachers. Of those submitting affidavits, only the former teacher testified at the hearing on the 3.850 motion.[5] The family members indicated that Routly's mother resented and vehemently disliked him, never showed him affection, and disciplined him more severely than she did her other children. She held him responsible for the accidental death of her infant son, even though Dan was only two years old at the time of the accident. Routly's mother ordered him out of the house when he turned seventeen. Routly's father drank excessively and only showed affection to his children when he was drunk. He beat the children. Routly's older brother physically abused him. The death of his father in 1978 profoundly affected Routly.
Routly's former teacher, who taught him in a class for emotionally impaired students during his fourth and fifth grade years, testified that Routly was referred to her class as a result of his behavior problems. She described him as having difficulty forming relationships with other children and responding to her. He avoided physical contact. School records indicate that Routly was restless, inattentive, disruptive, hostile to authority, and aggressively hostile to his classmates. He destroyed property and stole things from other children. He was removed from parochial school for disobedience and stealing. Records indicate that he could not control himself or his emotions and that he was a loner who did not get along with his peers.
Routly has not demonstrated a reasonable probability that he would have received a life sentence if trial counsel had presented this evidence. Much of this evidence was before the judge and jury, although in a different form than now proffered. Two court-appointed mental health experts examined Routly prior to trial. Defense *402 counsel introduced the report of Dr. Natal, one of the experts, for the jury's consideration. The report contains Routly's account of his childhood. He indicated that his mother never touched him, always pushed him away, and blamed him his whole life for the death of his infant brother. Routly indicated that he often ran away from home as a child and when he did, his mother packed his clothes. He felt like a stranger in his own family. When he graduated from high school, Routly's mother gave him forty-eight hours to leave home. Routly reported that his father was a strict disciplinarian who beat him until he bled.[6] In addition, a presentence investigation report considered by the judge notes that Routly claimed that his father abused alcohol and physically abused him and that his childhood was unhappy as a result.
Moreover, we find it purely speculative that a judge or jury, viewing this evidence as a whole, would have considered it mitigating. Although the affidavits indicate that Routly's mother mistreated him, they also indicate that Routly was his father's favorite and that his father was especially protective of him and gave him preferential treatment. Rather than disciplining Routly by beating him as he did the other children, Routly's father would often simply talk to him. In addition, the school records contain information which reflects badly upon Routly and reasonably might not be considered mitigating. See McCrae v. State, 510 So.2d 874, 879 (Fla. 1987) (whether more thorough or detailed presentation of sentencing issues could have persuaded trial judge to follow jury recommendation is wholly speculative).
Finally, the judge who presided over Routly's 3.850 motion was the same judge who presided over his trial and imposed the death sentence. In imposing the death sentence, the trial judge found five aggravating factors, all of which were affirmed on appeal. The judge found no mitigating factors. In ruling on the instant claim, the judge found that the failure to present this evidence at the sentencing phase had no effect on the sentence. This finding is entitled to considerable weight. Francis v. State, 529 So.2d 670, 673 n. 9 (Fla. 1988). See also Lusk v. State, 498 So.2d 902, 906 (Fla. 1986) (counsel not ineffective for failing to introduce mitigating evidence of appellant's troubled family background where the evidence was largely cumulative and would not have affected the ultimate sentence in view of the aggravating factors affirmed on direct appeal), cert. denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 517 (1987). Accordingly, we find no reasonable probability that had this evidence been presented at trial it would have affected the ultimate sentence.
We also find that Routly has failed to establish that counsel was ineffective in the guilt phase of trial. Routly alleges that defense counsel did not adequately investigate the circumstances behind his arrest, confession, and waiver of extradition. Defense counsel raised these issues at trial. Counsel argued the voluntariness of the confession to the jury. The validity of the arrest and confession were upheld on direct appeal. Routly v. State, 440 So.2d at 1260-61.
Routly further points to a transcript of the Michigan hearing on his waiver of extradition which indicates that he was charged with second-degree murder. He asserts that this substantiates his claim that he confessed because he was promised that he would be charged with second-degree murder and that O'Brien and their unborn child would be protected. The record reflects that this transcript was before the trial judge. The validity of the confession was fully litigated. Counsel was not deficient in this regard. We also find that counsel's alleged failure to introduce the Michigan booking card was not prejudicial.
Routly also alleges that counsel failed to investigate the circumstances of his extradition. He claims that because his waiver of extradition preceded the filing of formal *403 charges on the murder, the waiver was illegal. The trial record indicates that defense counsel argued this issue to the trial judge. Routly has failed to show deficient performance.
Routly also claims that defense counsel was ineffective in his cross-examination of Colleen O'Brien, in that he unreasonably limited questioning on her immunity, failed to explore psychiatric treatment she had received, and failed to follow up on charges that she stole money from her mother.[7] We have reviewed the record and find that counsel's cross-examination of O'Brien was not deficient. Counsel brought out the material facts of the immunity agreement. Defense counsel asked O'Brien if she had ever been treated by a psychiatrist or psychologist. She indicated that she saw someone after Routly broke off their engagement. Routly has not shown that anything would have been gained by further questioning on this matter. O'Brien testified at the evidentiary hearing below that she saw a psychologist on that one occasion for approximately an hour. O'Brien further testified at the evidentiary hearing that the theft charges against her arose after Routly stole money from her mother. Her mother thought that O'Brien was involved. O'Brien testified that she did not take the money and that she asked Routly to return it. Because this testimony reflects as negatively on Routly as it does O'Brien, we find no prejudice in counsel's failure to bring this out on cross-examination. In addition, we find no reasonable probability that the result of the proceeding would have been different had counsel cross-examined O'Brien more fully on these matters.
We do not find that defense counsel was ineffective for not moving for a mistrial when the jury revealed that they were unable to hear O'Brien's testimony and asked for a transcript. O'Brien was the State's key witness. Thus, there was little reason to ask for a mistrial if the jury had not been able to hear her testimony. Furthermore, counsel raised the issue after the verdict in a motion for a new trial.
Routly alleges Booth[8] error in his next claim on appeal. He argues that the trial judge relied on personal characteristics of the victim in his written findings of fact in support of the death penalty. We do not find the trial judge's passing reference to the victim as a widower who devoted his retirement years to community service to constitute Booth error. Likewise, the claim that error resulted from the presence of the court reporter in the jury room during a portion of deliberations is procedurally barred. McCrae v. State, 437 So.2d 1388, 1390 (Fla. 1983) (matters which were or could have been raised on direct appeal not cognizable in 3.850 motion).
Finally, Routly asserts that this Court's affirmance of the override on direct appeal was arbitrary and capricious. He argues that the trial judge failed to consider nonstatutory mitigation contained in the presentence investigation report, which formed a reasonable basis for the jury's life recommendation. He asserts that despite the presence of this nonstatutory mitigation, this Court affirmed the override. We note that any attempt to relitigate the validity of the override is procedurally barred. Porter v. Dugger, 559 So.2d 201, 203 (Fla. 1990); Eutzy v. State, 536 So.2d at 1015. Routly relies on Parker v. Dugger, ___ U.S. ___, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991), in an attempt to overcome the procedural bar. Parker does not constitute a change in law which would require retroactive application under Witt v. State, 387 So.2d 922 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). Similarly, the claim that the trial court's *404 sentencing order improperly presumed death to be the appropriate penalty is procedurally barred. Correll v. Dugger, 558 So.2d 422, 426 n. 6 (Fla. 1990).
To the extent that Routly alleges Hitchcock error,[9] we find no merit in such a claim. The sentencing order makes clear that the judge did not limit his consideration to statutory mitigating factors in imposing the death penalty. Nor did the judge refuse to consider nonstatutory mitigation urged by the defendant. Rather, as the sentencing order indicates, the decision to impose the death penalty was the result of the finding of five aggravating circumstances and "no mitigating circumstances ... statutory or otherwise." See Lewis v. State, 398 So.2d 432, 438 (Fla. 1981) (jury recommendation "should not be overruled unless, based on the aggravating circumstances and the lack of mitigating circumstances, a sentence of death is clearly appropriate").
Accordingly, we affirm the denial of Routly's 3.850 motion.
It is so ordered.
SHAW, C.J. and OVERTON, McDONALD, GRIMES and HARDING, JJ., concur.
BARKETT, J., concurs in part and dissents in part with an opinion, in which KOGAN, J., concurs.
BARKETT, Justice, concurring in part, dissenting in part.
I dissent to the denial of relief on Routly's claim of ineffective assistance of counsel at sentencing. The jury recommended a life sentence despite the absence of mitigating evidence that should have been presented. This mitigating evidence would have provided a reasonable basis for the life recommendation and precluded an override under Tedder v. State, 322 So.2d 908 (Fla. 1975).
KOGAN, J., concurs.
NOTES
[1] The court found the following aggravating factors: (1) the murder was committed while defendant was engaged in the commission of a kidnapping and while defendant was engaged in flight after committing burglary; (2) the murder was committed for the purpose of avoiding or preventing arrest; (3) the murder was especially heinous, atrocious, or cruel; (4) the murder was cold, calculated, and premeditated; (5) the murder was committed for pecuniary gain.
[2] In addition to the brief submitted by collateral counsel on his behalf, Routly has submitted a pro se brief. Three of the issues Routly raises are also raised in collateral counsel's brief. The fourth issue, an alleged violation of speedy trial, is procedurally barred because it was raised on direct appeal.
[3] The warrant was issued as a result of the State's difficulty in securing O'Brien's presence at trial. Although O'Brien had agreed to testify against Routly and to remain in contact with the State, she disappeared shortly before the trial date. Upon her disappearance, the State obtained the warrant for her arrest. She was subsequently located in Oregon. The prosecutor and law enforcement officers flew to Oregon, obtained her signature on the written immunity agreement, and brought her back to Florida for Routly's trial.
[4] We note that "an attorney's own admission that he or she was ineffective is of little persuasion in these proceedings." Kelley v. State, 569 So.2d 754, 761 (Fla. 1990) (citing Johnson v. Wainwright, 463 So.2d 207 (Fla. 1985)). See also Harris v. Dugger, 874 F.2d 756, 761 n. 4 (11th Cir.), cert. denied, 493 U.S. 1011, 110 S.Ct. 573, 107 L.Ed.2d 568 (1989).
[5] Absent stipulation or some other legal basis, we cannot see how the affidavits can be argued as substantive evidence. However, because the State has not raised this issue, we will treat the contents of the affidavits as if the witnesses had personally testified.
[6] Routly also claims that trial counsel failed to provide the mental health experts with background information. It is apparent from Dr. Natal's report that Routly provided the doctor with background information.
[7] Routly claims that counsel was ineffective in this regard even ignoring the State's alleged failure to disclose the documents discussed in the first issue on appeal.
[8] Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). The United States Supreme Court recently overruled Booth in Payne v. Tennessee, ___ U.S. ___, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), and held that the Eighth Amendment does not prohibit the admission of victim-impact evidence and prosecutorial argument on that subject if a state chooses to permit the admission of such evidence and argument. We do not address the application of Payne to this case.
[9] Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).