PARIENTE, J,
concurring in part and dissenting in part.
While I concur in affirming the convictions, I dissent as to the sentence because, for the reasons addressed below, I do not believe that competent, substantial evidence supports the aggravating circumstances of CCP and HAC — aggravators that were relied upon in determining the proportionality of the sentence of death. Because HAC and CCP are generally considered to be two of the most serious aggravators and only one aggravator is left,[8] I would conclude that Baker’s sentence should be reduced to life, particularly in light of the significant mitigation present in this case. Specifically, the trial court found two statutory mitigators (he was young in age, and at the time of the offense, he was suffering from an extreme mental or emotional disturbance) and found the following nonstatutory mitigation: Baker suffered childhood abuse and neglect; he had brain damage (a frontal lobe impairment), low intellectual functioning, and drug addiction; he was remorseful; and he cooperated with police.
First, I do not believe that the record supports the aggravating circumstance of CCP, but in fact establishes that this murder was unplanned and that the decision to murder the victim was formulated during a panic. Here, the facts show that after the home invasion and robbery, Baker took only one of the victims, Elizabeth, with him for the sole purpose of ensuring that the PIN was correct. He left behind the other two other eyewitnesses to the crime. In driving her to various ATM machines, Baker repeatedly assured Elizabeth that he would let her live. After unsuccessful attempts to obtain money from the ATMs, he then drove her to a deserted location because the isolated location would prevent her from finding a telephone quickly and thus provide him with more time to get away. After letting the victim go, Baker began to drive away, but suddenly changed his mind. He stopped the car and ran after her, firing two shots at her. In his post-arrest interrogation, he described the event as follows:
Detective Young: Let me ask you this: When you all got to the Mondex, this lady, did she get out of the car on her own?
Baker: Uh-huh.
Detective Young: She got out on her own? And did you tell her to lay down? Baker: No. She got out of the car, like — this is what — I told her she was going to live and stuff.
*826 Detective Young: Uh-huh.
Baker: And, like, she got out of the car. I let her walk off. And then I drove off a little bit, only, like 15 feet. I was like, no, like, I just jumped out of the car. I put the car — threw the car in park real — park real quick.
Detective Young: Okay.
Baker: And my old lady was like, “Don’t do it. Don’t do it.” And I was like, shit. I felt like I done came this far. I really — shit, you know, I jumped out of the car and she started to run. She ran in the bushes, and that’s when I shot her.
He later explained that the reason he killed the victim was because he “just freaked out.” His testimony was corroborated by Roosa, who participated in the robbery and kidnapping.
In order to establish the CCP aggravator, the evidence must show: (1) “the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold)”; (2) “the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated)”; (3) “the defendant exhibited heightened premeditation (premeditated)”; (4) “the defendant had no pretense of moral or legal justification.” Franklin v. State, 965 So.2d 79, 98 (Fla.2007) (emphasis added). “[T]he evidence must prove beyond a reasonable doubt that the defendant planned or prearranged to commit murder before the crime began.” Thompson v. State, 565 So.2d 1311, 1318 (Fla.1990).
Baker’s acts surrounding the kidnapping and shooting of the victim show that at the time of the killing, Baker was in an emotional panic and was not acting on a careful or prearranged plan to murder the victim. He was in the process of driving away after letting the victim go when he suddenly changed his mind. At the time of this decision, the victim was only about fifteen feet away. When she realized Baker’s change of mind, she ran toward the nearby bushes, but fell down. Baker fired his gun and shot her twice. This undisputed evidence is inconsistent with a finding of CCP.
In Chamberlain v. State, 881 So.2d 1087, 1107 (Fla.2004), this Court held that where the defendant formed the intent to murder the victims at the time of the attack, this was insufficient to show that the defendant had formulated a calculated plan to murder the victims — a necessary element in order to find CCP. In this case, the majority places great weight on evidence that the victim suffered two significant gunshots, one of which was fired from within eighteen inches from the victim. However, the fact that one of the injuries was at close range cannot by itself support CCP, particularly in light of the fact that the initial distance between the defendant and victim was not significant. There is no evidence that this case involves a prolonged chase, but rather the opposite. He was close to the victim when he first began to run after her, and she tripped shortly thereafter. Further, evidence that he shot her twice does not support CCP in this case. In Mahn v. State, 714 So.2d 391, 398 (Fla.1998), this Court rejected CCP even though the defendant had stabbed his father’s girlfriend numerous times, including five which were potentially fatal, and stabbed her son six times, one of which was fatal. The fact that the defendant stabbed both victims multiple times was not a factor in analyzing CCP.
Second, I do not believe that there is competent, substantial evidence to establish the HAC aggravator. We have explained the HAC aggravator as follows:
It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain *827 with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies — the conscienceless or pitiless crime which is unnecessarily torturous to the victim.
Williams v. State, 37 So.3d 187, 198 (Fla.2010) (emphasis added) (quoting Hernandez v. State, 4 So.3d 642, 668-69 (Fla.2009)). The HAC aggravator “focuses on the means and manner in which death is inflicted and the immediate circumstances surrounding the death.” Id. (quoting Hernandez, 4 So.3d at 669).
The majority upholds the finding of HAC because the “facts of this case demonstrate a series of acts, each of which was committed with utter indifference to the suffering of the victim.” Majority op. at 821. The majority then discusses that during the home invasion, the victim had been grazed by a bullet that caused significant bleeding, she was confined during the kidnapping along with her family, and she was forced to remain with her captors at gunpoint for several hours. However, all of these facts involve the other offenses that Baker committed against the victim, prior to the decision to kill her. In determining whether HAC applies, the trier of fact must determine that “[t]he capital felony was especially heinous, atrocious, or cruel.” § 921.141(5)(h), Fla. Stat. (2006) (emphasis added). This cannot be supported based solely upon the fact that prior to the capital felony, Baker had committed a robbery and kidnapping.
In all of the decisions upon which the majority relies, the Court found that HAC was proven based on the mental or physical suffering of the victim as it related to the capital felony — not based on prior crimes that had been committed earlier. For example, while the majority focuses on Routly, in that case, this Court stressed that HAC could be found, even if the victim’s death itself was quick, where “the victims were subjected to agony over the prospect that death was soon to occur.” Routly v. State, 440 So.2d 1257, 1265 (Fla.1983) (emphasis added). Thus, in Routly, HAC was established where the record showed that the victim understood that the defendant intended to kill him, and the victim desperately attempted to gain his freedom, but was bound, placed in the trunk of his car, driven to a remote location, and shot to death, Id.
Here, the record shows just the opposite. First, the victim in this case knew that the defendant had left alive two eyewitnesses to the prior crimes (the victim’s mother and her son). Second, the victim repeatedly asked and was assured that she would be permitted to leave. When she left the car, she did not start to run until after the defendant stopped the car the second time — the point at which he changed his mind and decided to kill her. Simply put, the victim was not subjected to “agony over the prospect that death was soon to occur” during the home invasion or during the car ride. In support of HAC, the majority discusses other acts that had nothing to do with the murder or the victim’s mental anguish pertaining to the capital felony.
In fact, in Donaldson v. State, 722 So.2d 177, 186-87 (Fla.1998), this Court recognized that HAC was inappropriate in a case extremely similar to this one, where the victims were kidnapped at gunpoint and held for several hours and the victims repeatedly asked whether they were going to die and were assured that they would not be killed. This Court held that HAC was improper because the evidence did not establish that “the defendant intended or that the victims suffered an acute awareness of their impending deaths, or that *828 [the defendant] intended to cause them unnecessary pain or prolonged suffering.” Id. at 187; see also Robinson v. State, 574 So.2d 108, 112 (Fla.1991) (rejecting application of the HAC aggravator where the evidence indicated that the defendant had not intended to cause the victim any prolonged suffering and, in fact, had assured the victim that she would not be killed). Accordingly, I do not believe competent, substantial evidence supports this aggravator.
As stated in my special concurrence in Zommer v. State, 31 So.3d 733, 755 (Fla.), cert. denied, — U.S. -, 131 S.Ct. 192, 178 L.Ed.2d 115 (2010):
We must exercise care not to expand aggravators so that they run afoul of the Eighth Amendment. As recently reiterated by the U.S. Supreme Court, “States must give narrow and precise definition to the aggravating factors that can result in a capital sentence.... Th[is] rule[ ] vindicate^] the underlying principle that the death penalty is reserved for a narrow category of crimes and offenders.” Roper v. Simmons, 543 U.S. 551, 568-69, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (“Because the death penalty is the most severe punishment, the Eighth Amendment applies to it with special force. Capital punishment must be limited to those offenders who commit ‘a narrow category of the most serious crimes’ and whose extreme culpability makes them ‘the most deserving of execution.’ ” (citations omitted)); see also Tuilaepa v. California, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994) (holding that in order for an aggravating circumstance to not be constitutionally infirm, it “may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder”).
Here, I believe that the majority’s upholding of CCP and HAC significantly expands the application of these aggravators. As to CCP, based on this decision, this aggra-vator can now be applied to facts where the decision to murder the victim was made mere moments prior to the murder, simply based on an extremely short fifteen-foot “chase” where two gunshots were fired. This turns every first-degree premeditated murder conviction into an automatic aggravator. As to HAC, this aggra-vator can now be applied in situations where the defendant had any prolonged contact with the victim, regardless of the nature of the contact, and had committed prior crimes against the victim that were not related to the murder itself.
Because I do not believe that the evidence supports two out of the three aggra-vators, I dissent as to the sentence and would reduce the sentence to life imprisonment without the possibility of parole.
PERRY, J., concurs.

. The remaining aggravator is that the crime was committed while Baker was engaged in the commission of a home invasion robbery or kidnapping, which was merged with the aggravator that the capital felony was committed for pecuniary gain.