# Supreme Court of Florida

―――――――

No. SC20-1589

―――――――

**QUENTIN MARCUS TRUEHILL,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

―――――――

No. SC21-828

―――――――

**QUENTIN MARCUS TRUEHILL,**
Petitioner,

vs.

**RICKY D. DIXON, etc.,**
Respondent.

September 29, 2022

PER CURIAM.

Quentin Marcus Truehill appeals the circuit court's order denying numerous guilt and penalty phase claims raised in his postconviction motion filed under Florida Rule of Criminal

Procedure 3.851 and petitions this Court for a writ of habeas corpus. For the reasons that follow, we affirm the circuit court's order and deny the habeas petition.[1]

## I.    BACKGROUND

Truehill, Kentrell Johnson, and Peter Hughes embarked on a crime spree stretching from Louisiana to south Florida leaving numerous victims in their wake. That journey began when the three men escaped from a Louisiana prison and stole a black truck. They drove east, later stopping at a parking lot in Broussard, Louisiana. There, they confronted LeAnn Williams and stole her purse, which contained credit cards. Truehill and his cohorts would later use those credit cards to fund their journey.

After stealing Williams's purse, the men continued east to Pensacola where they attacked Brenda Jo Brown in an apartment complex. During the violent encounter, Truehill threatened Brown with a knife and as a result of the attack, Brown suffered serious injuries resulting in the amputation of five fingers.

---

1.  We have jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const.

The three then made their way to Tallahassee, eventually attacking Mario Rios in a parking lot. During the attack, Truehill grabbed Rios by the shirt and displayed a large knife. Rios was able to escape and later provided his shirt to law enforcement for DNA testing.

The three men then drove a short distance to another parking lot where they robbed Cris Pavlish. During this attack, Truehill swung a large knife resembling a machete at Pavlish. Though she was able to get away unharmed, Truehill succeeded in taking Pavlish's purse.

Shortly thereafter, the men encountered their final victim, Vincent Binder, as he was walking home from a study session. Binder was kidnapped and brutally murdered. His decomposed body was found in an empty field in St. Augustine. We previously described that scene as follows:

> Binder's hat was about twenty-five feet away from his body with a straight-line cut on the bill going toward the hat. Binder had four stab wounds to his back and blunt-force injuries to his left head area that penetrated into the cranium. Approximately ten chopping-type injuries to the back of Binder's head caused fractures and a four-inch hole in the back of his head. In addition, Binder's ribs were fractured, his ulna bone in the left forearm was fractured, and the radius was dislocated—classic

defensive injuries. Binder also sustained chopping injuries on his hands, causing fractures that also could be considered to be defensive injuries. Dr. Frederick Hobin, the medical examiner, opined that two knives were used to kill the victim, and that some of the wounds were consistent with a machete, while the stab wounds were caused by a different knife.

*Truehill v. State*, 211 So. 3d 930, 939 (Fla. 2017).

Eventually, the three men traveled to Miami where they were ultimately arrested. Upon their arrest, more evidence of their crimes came to light. Binder's wallet, a garbage bag full of clothing, a metal handsaw, a machete, a pair of black jeans, a black knife sheath, and a pair of blue jeans were found by law enforcement in the group's motel rooms. Law enforcement submitted the evidence for DNA testing.

Also in Miami, law enforcement located the stolen truck and found a bloody knife underneath the front passenger seat. Subsequent testing of the knife revealed that eight of the bloodstains contained a complete DNA profile matching Binder. Additionally, Williams's Louisiana identification card, ATM receipts, Pavlish's personal documents, and a blood-soaked green washcloth were also found in the truck. DNA testing of the washcloth would later reveal that the stain contained a complete DNA profile that

- 4 -

matched Binder, and a mixed DNA profile that was consistent with Binder and Johnson.

After locating this physical evidence, the State charged Truehill and his accomplices with the first-degree murder of Binder and sought the death penalty. During the ensuing guilt phase trial, the State called Williams, Brown, Rios, and Pavlish, who spoke of their encounters with Truehill. The State also called Florida Department of Law Enforcement (FDLE) analyst Suzanne Livingston, who had tested the DNA samples taken from the evidence submitted by law enforcement.

At the close of the State's case, Truehill requested a judgment of acquittal, which the trial court denied. The trial court thereafter submitted the case to the jury which found Truehill guilty of first-degree murder and kidnapping. The case then proceeded to the penalty phase.

At the penalty phase, the State presented evidence of several aggravating factors. As part of that evidence, the State showed that Truehill had been convicted of prior violent felonies and was serving a thirty-year sentence when he escaped from prison.

Following the State's case, numerous family members testified in support of Truehill. His stepmother, Miranda Truehill, testified that Truehill did not adjust well to his parents' divorce or his father's remarriage. She also stated that Truehill was an unhappy child who was more of a follower than a leader.

His sister, Jessica Gresko, testified about their upbringing, discussed the fighting that occurred between their parents, and described their father as a strict disciplinarian. She also elaborated on Truehill's troubled childhood, which included witnessing a school shooting.

His mother, Valli Trahan, testified about her marriage to Truehill's father, including the physical, verbal and emotional abuse that she suffered in front of her children. She described how Truehill was upset over the divorce and remarriage and further explained that his experience during Hurricane Katrina only made Truehill an angrier and more hostile person.

In addition to family members, the defense called Dr. Fredrick Sautter, a clinical psychologist, as a witness. He opined that Truehill suffers from posttraumatic stress disorder (PTSD) and depression. In rebuttal, the State called Dr. Gregory Prichard, who

testified that the level of trauma experienced by Truehill did not support a PTSD diagnosis.

At the conclusion of the penalty phase, the jury unanimously recommended that Truehill be sentenced to death. For its part, the trial court found six aggravators, which it weighed against five statutory and forty nonstatutory mitigators. Finding that the aggravating factors outweighed the mitigating circumstances, the trial court imposed a sentence of death consistent with the jury's recommendation.

Truehill appealed, raising six issues for our review.[2] Finding no merit in any of the arguments, we affirmed in all respects. *Id.* Truehill then sought certiorari review in the United States Supreme Court, which was denied. *Truehill v. Florida*, 138 S. Ct. 3 (2017).

---

2. Truehill argued that: (1) the trial court erred in overruling his objection to the State's use of a peremptory challenge to an African–American juror; (2) exclusion of potential jurors due to their age violates the constitution; (3) the trial court erred in permitting the State to introduce evidence of uncharged crimes; (4) the cumulative effect of improper closing comments warranted a new trial; (5) the trial court's erroneous rulings during the penalty phase deprived him of a fair trial; and (6) Florida's death sentencing scheme is unconstitutional based on *Ring v. Arizona*, 536 U.S. 584 (2002). *Truehill*, 211 So. 3d at 941-42.

## II.  POSTCONVICTION APPEAL

Truehill timely filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.851, raising eleven claims and numerous subclaims.  The circuit court summarily denied three claims but granted an evidentiary hearing on the remaining claims.  After the evidentiary hearing, the circuit court entered an order denying Truehill's motion in its entirety.  This appeal follows.

On appeal, Truehill argues that the circuit court erred in denying various claims of ineffective assistance of trial counsel, denying two *Giglio*[3] claims, denying a newly discovered evidence claim, and summarily denying three claims.

### A.  Ineffective Assistance of Counsel

Ineffectiveness claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Nelson v. State*, 73 So. 3d 77, 84 (Fla. 2011).  We have recently described that standard as follows:

> Under *Strickland v. Washington*, a defendant alleging that he received ineffective assistance of counsel has the burden to demonstrate that counsel's performance fell below an objective standard of reasonableness.  In order to prevail on a claim of ineffective assistance of counsel, a

---

3.  *Giglio v. United States*, 405 U.S. 150 (1972).

defendant must show both that trial counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. "Both prongs of the *Strickland* test present mixed questions of law and fact." *Johnson v. State*, 135 So. 3d 1002, 1013 (Fla. 2014). "In reviewing a trial court's ruling after an evidentiary hearing on an ineffective assistance of counsel claim, this Court defers to the factual findings of the trial court to the extent that they are supported by competent, substantial evidence, but reviews de novo the application of the law to those facts." *Id.* (quoting *Mungin v. State*, 932 So. 2d 986, 998 (Fla. 2006)).

As to the first prong, the defendant must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A court reviewing the second prong must determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

*Smith v. State*, 330 So. 3d 867, 875 (Fla. 2021) (some citations omitted).

With this standard in mind, we now consider each ineffectiveness claim as ruled on by the circuit court.

- 9 -

## 1.    Failure to Properly Question the Venire

Truehill challenges the circuit court's denial of his claim that trial counsel was ineffective in its questioning of the venire during jury selection.  Since Truehill failed to establish deficient performance or prejudice, we affirm the court's ruling as to this claim.

Truehill first argues that trial counsel was ineffective for failing to uncover racial bias in the jury because counsel failed to ask specific questions designed to expose racial bias.  The circuit court found that counsel's decision not to question the prospective jurors about racial bias was a reasonable trial strategy.  The record supports that finding.

At the evidentiary hearing, counsel spoke of his strategy to avoid asking questions about race.  Defense counsel testified that his general trial strategy is to avoid questions about racial bias unless the facts of a particular case pointed to a racially motivated crime.  And in this case, he viewed the allegations and pretrial evidence as showing crimes being committed based on opportunity, not race.  Furthermore, counsel testified that asking specific

questions about racial bias can be damaging, and that he wanted to avoid offending potential jurors by asking race-related questions.

We agree with the trial court that this strategy was reasonable under the norms of professional conduct. *See Boyd v. State*, 200 So. 3d 685, 699 (Fla. 2015). Accordingly, we affirm the circuit court's denial of relief.

Next, Truehill asserts that trial counsel was ineffective for failing to individually question two empaneled jurors on their views of the death penalty. Finding no deficient performance, the circuit court ruled that trial counsel sufficiently questioned the venire collectively about their views on the death penalty in light of the circumstances of this case. The record supports that finding.

The prosecutor posed a general question to the jury panel about their views on the death penalty. Specifically, the prosecutor asked whether any jurors were so opposed to the death penalty that they could never impose it under any circumstances or whether they believed in the death penalty so strongly that they thought it was the only appropriate punishment for murder. Jurors who had strong opinions on the death penalty raised their hands, and those

who did so were questioned further about their views. Neither of the two jurors in question here raised their hand.

On this same topic, defense counsel also asked the panel whether anyone would automatically impose the death penalty in cases involving a child or animal victim, or whether their impartiality might be affected by the violent images that would be introduced into evidence in this murder case. Jurors who expressed extreme views concerning the death penalty were stricken for cause.

Based on this record evidence, Truehill has not demonstrated deficient performance. *See Johnston v. State*, 63 So. 3d 730, 744 (Fla. 2011). Therefore, we affirm the circuit court's denial of this subclaim.

In his last voir dire-related argument, Truehill contends that counsel was ineffective for failing to ascertain if any of the jurors would be able to meaningfully consider mitigating evidence. The circuit court found no deficient performance, and the record supports that finding.

At the outset, we note that Truehill acknowledges defense counsel's extensive questioning on this topic but insists that the

defense did not ask the "right kind" of questions that would result in a fair and impartial jury.

Defense counsel testified at the evidentiary hearing that his questioning on mitigation was well thought out, that he had employed similar questions in other cases with success, and that the questions were designed to ensure that the jurors could fairly weigh the evidence. Counsel also provided specific reasons for not asking direct questions about certain mitigators. Accordingly, Truehill has not demonstrated that counsel's strategic decision was unreasonable, and we affirm the circuit court's denial of this claim. *See Bradley v. State*, 33 So. 3d 664, 671 (Fla. 2010) (noting that defendant has burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy' ") (quoting *Strickland*, 466 U.S. at 689).

## 2. Failure to Object to Prosecutor's Comments

Truehill next argues that the circuit court erred in denying his claim that trial counsel was ineffective in failing to object to comments made by the prosecutor during opening and closing statements. We disagree.

- 13 -

First, Truehill asserts counsel was ineffective during opening statements for failing to object when the prosecutor claimed that Truehill attacked a witness and took her purse where the facts ultimately introduced at trial did not support that assertion. The circuit court ruled that Truehill failed to show deficient performance as the comment merely outlined what the prosecutor expected the evidence would show. We agree with that reasoning.

"Opening remarks are not evidence, and the purpose of opening argument is to outline what an attorney expects to be established by the evidence." *Occhicone v. State*, 570 So. 2d 902, 904 (Fla. 1990) (citing *Whitted v. State*, 362 So. 2d 668 (Fla. 1978). The fact that such testimony is not ultimately elicited at trial does not render the initial comments objectionable. *See id.* Thus, the fact that the challenged comment here turned out to be unsupported by trial evidence does not render the comment improper. Since Truehill has not shown the comment to be improper, he cannot demonstrate that counsel was deficient for failing to object. *See Peterson v. State*, 154 So. 3d 275, 280 (Fla. 2014) (finding no deficient performance for failing to raise meritless objection). Accordingly, Truehill has failed to show deficient

- 14 -

performance, and we affirm the circuit court's ruling as to this point.

Second, Truehill faults counsel for failing to object during closing arguments to the prosecutor's description of him as the "hatchet man" in the attack on Brown. According to him, the evidence demonstrated that Brown neither saw nor identified the individual who caused her injuries. The circuit court found no deficient performance, reasoning that the description was a fair comment based on the evidence presented at trial. The record supports that finding.

Fairly interpreted, the comment did not constitute a specific accusation that Truehill injured Brown. Instead, as noted by the circuit court, it was a reasonable conclusion drawn from the evidence that Truehill was consistently the one seen wielding a knife. Moreover, contrary to Truehill's argument, Brown's trial testimony indicated that Truehill came at her with a knife. The statement was not a mischaracterization of the evidence warranting an objection, and counsel was not deficient for not objecting to it. *See Peterson*, 154 So. 3d at 280. Thus, we affirm the circuit court's ruling in this regard.

### 3. Ineffectiveness in Handling of Witnesses

Truehill argues that the circuit court erred in denying his claim that counsel was ineffective in its handling of several witnesses. That argument lacks merit for the reasons explained below.

### a. Guilt Phase Witnesses

Truehill asserts trial counsel was ineffective in its cross-examination of four State witnesses during the guilt phase.

### i. Leann Williams

Truehill argues that trial counsel was ineffective because he failed to cross-examine Leann Williams based on information she provided to law enforcement prior to trial. Specifically, he asserts Williams originally identified her attacker as Hispanic, identified only Johnson in a lineup, and failed to implicate Truehill as one of her attackers. The circuit court found that counsel was not deficient. The record supports that finding.

As the circuit court properly observed, there was other evidence tying Truehill to the attack on Williams. Several of Williams's personal items were discovered inside the stolen black truck. In addition, video evidence tied Truehill to the fraudulent

use of Williams's credit card. Questioning Williams on her prior identifications would have had limited impeachment value in light of the other evidence presented at trial. Thus, Truehill has failed to show deficient performance. *See Schoenwetter v. State*, 46 So. 3d 535, 554 (Fla. 2010) (explaining that trial counsel is not deficient for making reasonable decisions regarding trial strategy).

### ii. Brenda Brown

Similarly, Truehill argues that counsel was deficient for failing to cross-examine Brenda Brown based on information she provided to law enforcement prior to trial. The circuit court found that Truehill failed to show deficient performance because counsel had a strategic reason for its decision not to impeach Brown. The record supports that finding.

Defense counsel testified that he chose not to question Brown about the misidentification because he feared it would only have the effect of bolstering her in-court identification of Truehill. Specifically, counsel explained:

> [I]f somebody's identified somebody on the stand, then you ask them, well, did you misidentify them in the past, and they say, well, yes, I did, but he's the man, all I've done is accomplished a second identification of a man in

front of the jury that I caused by my own reckless question.

Additionally, in deciding not to cross-examine Brown as to her prior misidentification, counsel relied on the fact that Brown's DNA was found on a pair of black jeans. That DNA evidence corroborated Brown's trial testimony. Thus, in light of all the evidence connecting Truehill to Brown, he has not demonstrated that counsel's strategic decision to avoid the topic of the prior identification was unreasonable and we affirm the circuit court's determination as to this issue. *See Sheppard v. State*, 338 So. 3d 803, 819-20 (Fla. 2022) (reasonable trial strategy to avoid challenging a witness's identification to avoid giving the witness another opportunity to identify the defendant as the shooter).

### iii. Cris Pavlish

Truehill also argues that trial counsel was ineffective for failing to cross-examine Cris Pavlish on information she provided prior to trial. The trial court found that Truehill failed to show deficient performance, again finding that trial counsel employed a reasonable trial strategy. The record supports that finding.

At the evidentiary hearing, defense counsel explained that he chose not to question Pavlish on her prior lack of identification to avoid a dramatic reidentification of the defendant in front of the jury. This explanation shows counsel had a logical reason for choosing not to impeach Pavlish as to this issue. Furthermore, counsel considered the fact that Pavlish's personal documents were later recovered in the stolen truck when determining whether to question Pavlish on the prior lack of identification. Since Truehill failed to demonstrate that counsel's strategy in not questioning Pavlish was unreasonable, we affirm the circuit court's finding as to Pavlish. *See Schoenwetter*, 46 So. 3d at 554.

### iv.    Mario Rios

Finally, Truehill argues trial counsel was ineffective for wholly failing to cross-examine Mario Rios. The circuit court found that trial counsel exercised sound strategy, and the record supports that finding.

At the evidentiary hearing, defense counsel explained that he did not cross-examine Rios because of the existence of the corroborating DNA evidence implicating Truehill in the crime. That evidence came from the portion of Rios's shirt that Rios testified

- 19 -

had been grabbed by Truehill. This testimony shows that counsel had a tactical reason for not cross-examining Rios—one which we find to be reasonable under the facts and circumstances of this case. Thus, we affirm the circuit court's determination as to trial counsel's performance as to Rios. *See id.*

### b.  Penalty Phase Witnesses

In addition to the guilt phase witnesses, Truehill also takes issue with trial counsel's performance with respect to six penalty phase witnesses.

### i.  Miranda Truehill

Truehill argues that his stepmother, Miranda Truehill, was insufficiently prepared to testify during the penalty phase. As a result, she was unable to fully convey the depths of the abuse the family suffered at the hands of Truehill's father. The circuit court found no deficient performance, stressing that Truehill's home life was sufficiently explored during Ms. Truehill's testimony and that her inability to fully convey the "extent the abuse" was not due to trial counsel's lack of preparation. The record supports that finding.

Ms. Truehill's evidentiary hearing testimony largely contradicts her penalty phase testimony. At the evidentiary hearing she testified that Truehill's behavior was affected by his father's duplicitous personality and that she was responsible for disciplining Truehill because of the strained relationship between Truehill and his father. This was in stark contrast to her penalty phase testimony that Truehill's father was a disciplinarian and that the discipline Truehill received was appropriate under the circumstances. Accordingly, as the circuit court properly found, there was nothing more trial counsel could have done to elicit this testimony at the penalty phase. Moreover, Truehill has failed to explain how the additional information provided by Ms. Truehill would have been revealed at the penalty phase with more extensive preparation by defense counsel. Of note, during the penalty phase, she was directly asked whether Truehill's father was violent towards her, and she opined that he was not threatening or violent. In sum, Truehill has failed to show that trial counsel was deficient in preparing Ms. Truehill to testify, and we affirm the circuit court's finding on this point. *See Sochor v. State*, 883 So. 2d 766, 786 (Fla. 2004).

### ii. Jessica Gresko

Truehill similarly argues that trial counsel was ineffective for not adequately preparing his sister Jessica Gresko for her penalty phase testimony. As a result, Truehill asserts, Gresko was unable to provide a comprehensive narrative about the abuse caused by their father. The circuit court ruled that trial counsel was not deficient because her evidentiary hearing testimony was substantially similar to her penalty-phase testimony. The record supports that finding.

At the penalty phase, Gresko testified that her parents frequently fought and were physically abusive in front of the children. She testified to an incident where she was beaten over the head with a belt by her father and another time where her father slammed her older sister on the bed with his hand around her throat. She further testified that as a disciplinarian, her father was even harder on her brothers. According to her, he would break Truehill's skin when disciplining him; and he would verbally insult Truehill and his brother. In addition, she provided testimony showing that her parents' divorce was very difficult for Truehill. She also testified to the trauma Truehill experienced after the death

of his girlfriend's baby, and then later the death of his girlfriend. Gresko's testimony at the evidentiary hearing did not materially differ from her account given at the penalty phase.

Thus, Truehill has failed to show deficient performance and we affirm the circuit court's determination as to Gresko. *See id.* at 781-83.

### iii. Valli Trahan

Similarly, Truehill faults trial counsel for not properly preparing his mother, Valli Trahan, to testify at the penalty phase. In his view, with proper preparation, Trahan would have been able to provide a more comprehensive picture at the evidentiary hearing of the abuse she and her children suffered. The circuit court found no deficient performance because Trahan's testimony was largely cumulative to what she provided at the penalty phase. The record supports that finding.

At the penalty phase, Trahan testified to the marital problems she had with Truehill's father and also detailed his abuse of her. That abuse, she explained, was observed by Truehill and the other children. The testimony Trahan gave at the evidentiary hearing was

substantially similar to the testimony at the penalty phase. Thus, we affirm the circuit courts determination as to Trahan. *See id.*

### iv. Susan Herrero

Next, Truehill argues that trial counsel was ineffective for failing to produce mitigation specialist Susan Herrero to testify at the penalty phase and for failing to provide her with the resources necessary to interview more mitigation witnesses. We agree with the circuit court that the record refutes those assertions.

Defense counsel testified at the evidentiary hearing that there were no constraints placed on Herrero's work, and that Herrero never asked to question additional witnesses or pursue a different line of investigation. According to counsel, had such a request been made, it would have been approved.

In addition, counsel explained that he did not believe Herrero had offered to be present at trial. That explanation was corroborated by an email from Herrero to defense counsel indicating she was scheduled for surgery during the time of the trial. Thus, we conclude that Truehill has failed to show deficient performance and we affirm the circuit court's determination as to Herrero. *See Nelson v. State,* 875 So. 2d 579, 583 (Fla. 2004) ("If a witness would

not have been available to testify at trial, then the defendant will not be able to establish deficient performance or prejudice from counsel's failure to call, interview, or investigate that witness." (footnote omitted)).

### v.    Dr. Frederick Sautter

Next, Truehill claims that trial counsel was ineffective for not properly preparing defense witness, Dr. Frederick Sautter.  That inadequate preparation, Truehill argues, prevented Dr. Sautter from fully explaining the effects of Truehill's PTSD.  The circuit court found no deficient performance, stressing that Dr. Sautter effectively tied Truehill's prior traumas to his PTSD diagnosis.  The record supports that finding.

Dr. Sautter's penalty phase testimony spans nearly one hundred pages of transcript.  He explained the many ways PTSD can form and opined as to how the events surrounding Hurricane Katrina caused a spike in PTSD.  And, based on his interviews with individuals who were involved in Truehill's life, Dr. Sautter thoroughly discussed Truehill's prior traumas and how they caused PTSD.  Of significance, Dr. Sautter's testimony was the basis for several statutory and nonstatutory mitigators related to Truehill's

mental health condition—a significant portion of the overall mitigation.

In light of this evidence, we find that Truehill has failed to show deficient performance with respect to Dr. Sautter. *See Carroll v. State*, 815 So. 2d 601, 616 (Fla. 2002).

### vi. Dr. Gregory Prichard

Finally, Truehill argues that counsel was ineffective for failing to properly cross-examine the State's expert witness, Dr. Gregory Prichard.[4] Specifically, he faults counsel for only asking Dr. Prichard three "immaterial" questions on cross-examination. The trial court found no deficient performance, concluding in part that trial counsel employed a reasonable strategy. The record supports that finding.

At the evidentiary hearing, defense counsel testified to the strategy informing his decision to limit the scope of cross-examination. Counsel weighed the pros and cons of limiting the

---

4. Truehill also seems to argue that counsel was ineffective for not objecting to certain portions of Dr. Prichard's testimony. However, these arguments were not raised in his postconviction motion, and thus are waived. *Jackson v. State*, 47 Fla. L. Weekly S167, S168 (Fla. June 30, 2022) (failure to timely raise specific arguments results in waiver).

- 26 -

testimony or impeaching on different issues, ultimately deciding in favor of a more succinct cross-examination. In counsel's view, an extensive cross-examination of Dr. Prichard would have opened the door for the State to elicit more damaging information. Under the circumstances of this case, we hold that Truehill has failed to show that this strategy was unreasonable. We thus affirm the circuit court's determination as to counsel's performance with Dr. Prichard. *See Gaskin v. State*, 822 So. 2d 1243, 1248 (Fla. 2002).

**4.     Ineffectiveness in Handling of DNA Evidence**

We now turn to Truehill's principal claim on appeal, in which he argues that the circuit court erred in denying his ineffectiveness claim—which consists of several subclaims—regarding the DNA evidence. We conclude that even if Truehill could show deficient performance on the subclaims raised, he is not entitled to relief because he failed to demonstrate prejudice.

Truehill raises a total of five subclaims relating to the DNA evidence presented at trial. He asserts that trial counsel was ineffective for: (1) failing to obtain or present three documents at

trial[5]; (2) failing to object to portions of DNA expert Suzanne Livingston's testimony; (3) failing to question Livingston on transfer DNA; (4) failing to cross-examine Livingston on the changes to the FDLE guidelines implemented after she conducted her DNA analysis; and (5) failing to cross-examine or object to Livingston's testimony on the basis that she violated the lab operating procedures in effect at the time of her analysis. However, even if we agreed with Truehill that defense counsel's performance fell below objective standards of reasonableness with respect to the DNA evidence, we conclude there is no reasonable probability that the jury would have acquitted him in light of the overwhelming evidence of guilt. We now discuss that evidence.

The record in this case shows that Truehill, Hughes, and Johnson escaped from a Louisiana prison, stole a truck, and embarked on a crime spree that ended with their arrests in Miami.

---

5. Those documents were: (1) the 2010 Scientific Working Group on DNA Analysis Method ("SWGDAM") guidelines, which updated the way low-level mixed DNA profiles were evaluated; (2) the 2012 FDLE Standard Operating Procedures (SOPs) that implemented the 2010 SWGDAM guidelines at FDLE labs; and (3) the FDLE lab audits conducted in 2012 on the lab that analyzed the DNA evidence in this case.

While on their way to Miami, Truehill and his cohorts attacked Williams, Brown, Rios, and Pavlish before encountering Binder. We previously detailed some of the evidence linking Truehill to Binder's murder as follows:

> Binder had his bankcard with him earlier [in the] evening when he made a purchase at a gas station. He then joined some friends at their home, where they studied until midnight. Binder decided to walk home, which was about a mile away. Fifteen minutes after Binder left his friends' house, Truehill was videotaped using Binder's bankcard at the ATM machine inside the Half Time Keg store, without Binder's presence, as Truehill withdrew money from Binder's account. Binder did not have any connections to Truehill or the other two codefendants.
>
> A few hours later, around 2:33 a.m., on April 2, 2010, Binder's bankcard was used in Jacksonville, Florida, to make additional gasoline purchases. Truehill and his codefendants successfully used Binder's bankcard as they continued toward Miami, including using it in Daytona Beach, Fort Pierce, Opa Locka, and Miami.

*Truehill*, 211 So. 3d at 952.

Truehill and his codefendants later attempted to withdraw money from Binder's bank account using Binder's driver's license and bankcard. This was corroborated by a bank employee and photographic evidence.

- 29 -

Additional evidence connecting Truehill to Binder was found inside the stolen truck. Specifically, law enforcement discovered Binder's bankcard receipts, a bloodstained washcloth, and a bloodstained silver knife. The blood on the knife came back with eight complete profiles that matched Binder's known DNA.[6] And it was clear that Binder's extensive injuries were consistent with knife wounds. Furthermore, the silver knife matched the description of the knife Truehill wielded when threatening Brown and Rios.

Moreover, there was considerable evidence in the men's motel rooms that further tied Truehill to the murder, including Binder's wallet, a black knife sheath, a heavy-duty garbage bag containing male clothing, a metal handsaw, and a machete.

In sum, there is overwhelming evidence linking Truehill to the murder and kidnapping of Binder. Based on this record, we find that there is no reasonable probability that the jury's verdict of guilt would have been different even if the challenged DNA evidence were

---

6. None of Truehill's DNA challenges attack the complete-profile DNA matches.

wholly excluded.[7]  Thus, Truehill has failed to show prejudice, and, as a consequence, we affirm the circuit court's ruling on this claim without reaching the deficient-performance prong.  *Sheppard*, 338 So. 2d at 816 ("Because *Strickland* requires a defendant to establish both prongs, if one prong is not met, the Court need not reach the other." (citing *Stewart v. State*, 801 So. 2d 59, 65 (Fla. 2001))).

## B.    *Giglio* **Claim**

Truehill next argues that the circuit court erred in finding that no *Giglio* violations occurred at his trial with respect to the testimony of DNA expert Livingston.  We disagree.

To establish a *Giglio* violation, a defendant must demonstrate: "(1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material."  *Guzman*

---

7.  We have not overlooked our statement on direct appeal that "the forensic testing of the washcloth, the knives, and the jeans indicates that Truehill was present for the murder."  *Truehill*, 211 So. 3d at 953.  But that statement does not undermine our prejudice analysis now.  Critically, we now focus on the other evidence of guilt, such as the timing of the collateral crimes in Tallahassee, Truehill's use of Binder's bankcard just minutes after Binder left the study group, and the evidence found inside the stolen truck.  And, consistent with our analysis above, we concluded on direct appeal that Truehill played an active role in the murder—doing so without relying on Truehill-specific DNA or any mixed sample evidence.

- 31 -

*v. State*, 868 So. 2d 498, 505 (Fla. 2003) (citing *Ventura v. State*, 794 So. 2d 553, 562 (Fla. 2001)). A statement is considered material under *Giglio* if "there is a reasonable probability that the false evidence may have affected the judgment of the jury." *Ventura*, 794 So. 2d at 563 (quoting *Routly v. State*, 590 So. 2d 397, 400 (Fla. 1991)). "In analyzing this issue . . . courts must focus on whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* (quoting *White v. State*, 729 So. 2d 909, 913 (Fla. 1999)).[8]

Here, Truehill's *Giglio* claim relies on many of the same facts advanced in his DNA-related ineffectiveness claim. Specifically, Truehill asserts that Livingston's testimony violated *Giglio* because she (1) failed to disclose that FDLE's new procedures could have potentially changed her interpretation of certain DNA results and

---

8. In assessing a ruling on a *Giglio* claim, we apply a mixed standard of review, deferring to the factual findings made by the trial court to the extent they are supported by competent, substantial evidence, but reviewing de novo the application of the law to those facts. *Sochor*, 883 So. 2d at 785.

(2) failed to provide a statistical weight for some results that implicated him.

As to the first alleged *Giglio* violation, Truehill does not cite to any specific portion of Livingston's testimony that was false. Instead, he suggests that Livingston should have retested the DNA evidence, issued a new report, given new testimony, and notified the parties that her conclusions could be called into question. In essence, Truehill argues that the falsity lies in Livingston's lack of testimony regarding the change in guidelines. However, Truehill provides no case law holding that an absence of testimony can satisfy the requirements of *Giglio*. Moreover, even if he had demonstrated falsity, Truehill has failed to show that the lack of testimony as to the guidelines change was material to the case. The same evidence we discussed in the prejudice analysis demonstrates why there is no reasonable likelihood of a different verdict.[9]

---

9. We acknowledge that the materiality prong of *Giglio* differs from the prejudice prong of *Strickland,* but find that the evidence presented in this case satisfies both standards. *Compare Ponticelli v. Sec'y, Fla. Dept. of Corr.,* 690 F.3d 1271, 1292 (11th Cir. 2012), *with Guidry v. Lumpkin*, 2 F.4th 472, 492 (5th Cir. 2021).

As to the second alleged *Giglio* violation, Truehill argues that the guidelines in effect at the time of Livingston's testimony required her to assign statistical weights to items of evidence containing low-level mixed DNA samples and her failure to do so violated *Giglio*. The trial court denied this claim, and the record supports that finding.

Here again, Truehill has not pointed to any portion of Livingston's testimony that was false. Nor has Truehill cited any case law supporting his claim that a lack of testimony as to the statistical value of DNA constitutes a *Giglio* violation. And Truehill does not explain how the absence of statistical weight would have caused the jury to overvalue Livingston's testimony that Truehill *possibly* left DNA on the wallet, washcloth, and a pair of jeans. As a consequence, Truehill has failed to show that Livingston's testimony was false. And, even if Truehill had shown falsity, he would still not be entitled to relief as he failed to prove the materiality prong.

Accordingly, we affirm the circuit court's denial of the *Giglio* claims.

## C.     Newly Discovered Evidence

Truehill next argues that the circuit court erred in denying his claim seeking relief based on newly discovered evidence.  To establish a claim of newly discovered evidence, a defendant must satisfy the two-prong test set forth in *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998):

> Two requirements must be met in order for a conviction to be set aside on the basis of newly discovered evidence. First, in order to be considered newly discovered, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence." *Torres–Arboleda v. Dugger*, 636 So. 2d 1321, 1324–25 (Fla. 1994).

> Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. *Jones [v. State]*, 591 So. 2d at 911, 915 [(Fla. 1991)].  To reach this conclusion the trial court is required to "consider all newly discovered evidence which would be admissible" at trial and then evaluate the "weight of both the newly discovered evidence and the evidence which was introduced at the trial." *Id.* at 916.

Truehill asserts that the MIX 13 studies, a series of scientific studies conducted on DNA labs across the country, is newly discovered evidence because it brings to light inconsistencies in DNA interpretation.  The record supports that trial counsel was aware of the discrepancies with DNA interpretation among labs.

Thus, to the extent that the MIX 13 study is based on information that was previously available to counsel at the time of trial, it does not constitute newly discovered evidence. *See Schwab v. State,* 969 So. 2d 318, 325–26 (Fla. 2007) ("[T]his Court has not recognized 'new opinions' or 'new research studies' as newly discovered evidence."); *see also Davis v. State,* 142 So. 3d 867 (Fla. 2014); *Branch v. State,* 236 So. 3d 981 (Fla. 2018).

Even if the information in the studies was not available at the time of trial, Truehill has failed to satisfy the second prong of *Jones.* If admitted, the MIX 13 studies would, at best, slightly undermine the mixed, low-level DNA evidence. However, we concluded above that any deficient performance as to the DNA evidence—which necessarily includes the mixed, low-level DNA—did not prejudice Truehill under the higher *Strickland* prejudice standard.[10]

---

10. *Compare Taylor v. State,* 260 So. 3d 151, 160 (Fla. 2018) ("The second prong of the *Jones* test requires that the newly discovered evidence be of such a nature that it would probably produce an acquittal on retrial."), *with Davis v. State,* 136 So. 3d 1169, 1190 (Fla. 2014) ("*Strickland* does not 'require a defendant to show "that counsel's deficient conduct more likely than not altered the outcome" of his penalty proceeding, but rather that he establish "a probability sufficient to undermine confidence in [that] outcome." ' " (quoting *Porter v. McCollum,* 558 U.S. 30, 44 (2009))).

Therefore, consistent with that holding, we now conclude that the MIX 13 studies would not lead to an acquittal on retrial. Accordingly, we affirm the circuit court's denial of this claim.

**D.    Claims Denied an Evidentiary Hearing**

Next, Truehill argues that the circuit court erred in denying several of his claims without the benefit of an evidentiary hearing.

An evidentiary hearing must be held on an initial 3.851 motion whenever the movant makes a facially sufficient claim that requires a factual determination. *Seibert v. State*, 64 So. 3d 67, 75 (Fla. 2010) ("On an initial rule 3.851 motion, to the extent there is any question as to whether the movant has made a facially sufficient claim requiring a factual determination, the court must presume that an evidentiary hearing is required.").  "A summary or conclusory allegation is insufficient to allow the trial court to examine the specific allegations against the record." *Ragsdale v. State*, 720 So. 2d 203, 207 (Fla. 1998).  The determination of whether a claim warrants a hearing is subject to de novo review.[11]

11.  *Rogers v. State*, 327 So. 3d 784, 787 n.5 (Fla. 2021) ("The standard of review here is de novo." (citing *Boyd v. State*, 324 So. 3d 908, 913 (Fla. 2021))).

First, Truehill argues that the circuit court erred in summarily denying his claim that counsel was ineffective for failing to move to change venue. We find no error in the summary denial of this claim. Truehill's brief provides no legal basis or explanation as to why a change-of-venue motion would have been granted, and is thus legally insufficient to show why an evidentiary hearing was warranted. *See Sexton v. State*, 997 So. 2d 1073, 1086 (Fla. 2008) ("Because Sexton does not provide in the initial brief 'an explanation why summary denial was inappropriate or what factual determination was required on each claim so as to necessitate an evidentiary hearing,' his conclusory argument is insufficient to preserve his claim." (quoting *Doorbal v. State*, 983 So. 2d 464, 482 (Fla. 2008)).[12]

Next, Truehill argues that the trial court improperly denied an evidentiary hearing on his claim that Florida's statute revoking the voting rights of convicted felons denied him a fair cross-section of

12. To the extent that Truehill asserts new arguments in his reply brief that were not raised in his initial brief, we find that those arguments are waived. *State v. Dougan*, 202 So. 3d 363, 378 (Fla. 2016) (arguments raised for first time in reply brief are waived); *see also Johnson*, 135 So. 3d at 1033.

the community from which to select a jury. This claim is procedurally barred because Truehill should have raised it on direct appeal. *See Reaves v. State*, 826 So. 2d 932, 936 n.3 (Fla. 2002) (denying Reaves's claim that the jury was not composed of a fair cross-section of the community as procedurally barred because that argument should have been raised on direct appeal but was not). And, as with the former claim, Truehill fails to assert what factual dispute would be resolved at an evidentiary hearing. Thus, we affirm the circuit court's summary denial of this claim.

Finally, Truehill argues that the circuit court should have held an evidentiary hearing on his proportionality claim. According to Truehill, his codefendants' life sentences render his death sentence disproportionate. But at minimum, Truehill insists, we or the circuit court must reconsider his death sentence in light of his codefendants' sentences. We affirm the summary denial of this claim as well.

A claim of relative proportionality fails where there are purely legal reasons for the more lenient punishment of a codefendant. *See Walton v. State*, 246 So. 3d 246, 252 (Fla. 2018) (holding that

when codefendants receive lesser sentences due to purely legal reasons, proportionality is not an issue).

That rule applies here. Hughes pled guilty to first-degree murder in exchange for a life sentence. And Johnson's death sentence was vacated on the singular basis that he made a deal with law enforcement that he would help them find Binder's body in exchange for avoiding the death penalty. *Johnson v. State*, 238 So. 3d 726, 739 (Fla. 2018). In short, the reasons for Hughes's and Johnson's life sentences have no connection to aggravating and mitigating circumstances applicable to Truehill. Thus, Truehill's relative proportionality claim fails, and we affirm the circuit court's summary denial.[13]

### E.    Cumulative error

In the final issue of his appeal, Truehill argues that the cumulative effect of the errors at the guilt and penalty phases deprived him of a fundamentally fair proceeding. We disagree.

---

13. To the extent Truehill is also requesting a new comparative proportionality review, we decline to revisit our precedent in this regard. *See Lawrence v. State*, 308 So. 3d 544, 552 (Fla. 2020) (abandoning comparative proportionality review).

"[W]here the individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error also necessarily fails." *Parker v. State*, 904 So. 2d 370, 380 (Fla. 2005); *see also Griffin v. State*, 866 So. 2d 1, 22 (Fla. 2003). As discussed in the analysis of the individual issues above, the alleged errors are either meritless, procedurally barred, or fail to meet the *Strickland* standard. Thus, Truehill is not entitled to relief on this claim either.

## III. PETITION FOR WRIT OF HABEAS CORPUS

Truehill has also petitioned this Court for a writ of habeas corpus raising two claims for our consideration—one asserting deficient performance of appellate counsel and the other seeking relief based on proportionality review. Neither has merit.

## A. Ineffectiveness of Appellate Counsel

For his ineffectiveness claim, Truehill argues that appellate counsel defaulted on his opportunity for federal habeas review because he did not explicitly raise federal issues in three separate claims on direct appeal.[14] Truehill acknowledges that counsel

---

14. The three claims were: (1) whether the trial court erred in permitting the State to introduce other crimes, wrongs or acts over

raised the substance of the issues, but he nevertheless asserts ineffectiveness because counsel did not explicitly allege federal constitutional violations. In addition, Truehill argues, counsel did not preserve his claims for appellate review. We disagree.

The standard for assessing a claim for ineffective assistance of appellate counsel parallels the *Strickland* standard for trial counsel. *Wilson v. Wainwright*, 474 So. 2d 1162, 1163 (Fla. 1985). Thus, to succeed on such a claim, the petitioner must establish that appellate counsel's performance was deficient and that the deficient performance resulted in prejudice. *Rutherford v. Moore*, 774 So. 2d 637, 643 (Fla. 2000).

We conclude that Truehill has failed to show deficient performance as to any of the three claims. As for his argument that failing to present arguments expressly premised on the federal constitution affected our review on direct appeal, Truehill neither explains nor provides a legal basis for his argument that pleading

Truehill's objection; (2) whether the cumulative effect of the prosecutor's improper comments during closing arguments vitiated the entire trial and warrants a new trial; and (3) whether the trial court's erroneous rulings during the penalty phase, in the aggregate, deprived Truehill of a fair trial.

specific federal issues would have had an impact on our ruling. Notably, he has not identified how the federal constitutional standards to which he alludes differed from the standard we applied on direct appeal. Nor does he indicate how failing to specifically cite pages in the record precluded our review of his appellate argument. Accordingly, Truehill has failed to meet his burden of alleging "a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." *Frances v. State*, 143 So. 3d 340, 357 (Fla. 2014) (citing *Brown v. State*, 846 So. 2d 1114, 1127 (Fla. 2003)).

As for his argument claiming a default for purposes of federal habeas review, Truehill misstates the exhaustion and preservation requirements applicable in federal habeas cases. "To exhaust state remedies and preserve a claim for federal review, a defendant need only present the substance of a federal constitutional claim to the state court." *Anderson v. State*, 313 So. 3d 1196, 1198 (Fla. 1st DCA 2021) (citing *Picard v. Connor*, 404 U.S. 270, 278 (1971)). Appellate counsel presented the substance of the federal claims; therefore, Truehill's federal claims are not waived.

Accordingly, we deny his claim of ineffective assistance of appellate counsel.

## B.     Proportionality

In his second claim, Truehill argues that he is entitled to a new proportionality review because his codefendants are serving life sentences.  As noted previously, Truehill has provided no legal basis that obliges us to perform comparative proportionality or relative proportionality review now.  Accordingly, we deny this claim.

## IV.   CONCLUSION

For the reasons stated above, we affirm the challenged order and deny the petition for writ of habeas corpus.

It is so ordered.

MUÑIZ, C.J., and CANADY, POLSTON, COURIEL, and
GROSSHANS, JJ., concur.
LABARGA, J., concurs in result.
FRANCIS, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION
AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for St. Johns County,
    Raul A. Zambrano, Judge – Case No. 552010CF000763XXAXMX
And an Original Proceeding – Habeas Corpus

Eric Pinkard, Capital Collateral Regional Counsel, Tracy M. Henry,
Lisa M. Fusaro, and James L. Driscoll, Jr., Assistant Capital

Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant/Petitioner

Ashley Moody, Attorney General, Tallahassee, Florida, and Patrick A. Bobek, Assistant Attorney General, Daytona Beach, Florida,

    for Appellee/Respondent